FILED
DISTRICT COURT OF GUAM
JUL -7 2005
MARY L.M. MORAN
CLERK OF COURT

# DISTRICT COURT OF GUAM
# TERRITORY OF GUAM

| | |
|---|---|
| ISAGANI P. DELA PEÑA, JR., | Criminal Case No. 00-00126 |
| Petitioner, | Civil Case No. 04-00004 |
| vs. | |
| UNITED STATES OF AMERICA, | **ORDER** |
| Respondent. | |

Petitioner Isagani P. Dela Peña Jr. ("Dela Peña") filed a Motion to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255 ("Motion").[1] The Court deems the matter appropriate for decision without oral argument. FED. R. CIV. P. 78. After considering all the submissions, the Court DENIES Dela Peña's motion in its entirety.

## BACKGROUND

On May 7, 2005, pursuant to a jury verdict, Dela Peña was found guilty of (Count 1) Conspiracy to Distribute Methamphetamine Hydrochloride in violation of 21 U.S.C. § 841(a)(1) and 846, (Count 2) Distribution of Methamphetamine Hydrochloride in violation of 21 U.S.C. § 841(a)(1), (Count 3) Distribution of Methamphetamine Hydrochloride Near a Playground in violation of 21 U.S.C. § 860, (Count 4) Unlawful Use of Communication Facility to Facilitate Drug Crime in violation of 21 U.S.C. § 843(b), (Count 5) Possession of a Firearm by a Felon in violation of 18 U.S.C. § 922(g)(1), (Count 6) Possession of a Firearm by an Unlawful Drug User in violation of 18 U.S.C. § 922(g)(3) and 924(a)(2).[2] On October 9, 2001, the Court

---

[1] Dela Peña filed his initial Motion on January 22, 2004. *See,* Docket No. 127. On March 12, 2004, he filed a pleading entitled "Memorandum of Law in Support of Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255." *See,* Docket No. 132.

[2] *See,* Verdict, Docket No. 83.

sentenced Dela Peña to three hundred sixty-five (365) months imprisonment. The judgment of conviction was entered on the docket on October 22, 2001. In November 2001, the petitioner filed an appeal with the Ninth Circuit. On February, 26, 2003, the appellate court affirmed Dela Peña's conviction. *United States v. Isagani P. Dela Peña, Jr.*, D.C. No. CR-00-00126 (9th Cir. Feb. 26, 2003). Dela Peña *pro se* and incarcerated, brought this Motion pursuant to 28 U.S.C. § 2255 on January 22, 2004, requesting the Court to vacate his conviction and sentence. *See,* Docket Nos. 127 and 132.

## ANALYSIS

28 U.S.C. § 2255 allows persons in federal custody to collaterally challenge the constitutionality, legality or jurisdictional basis of the sentence imposed by a court.[3] *See, United States v. Addonizio*, 442 U.S. 178, 185, 99 S.Ct. 2235, 2240 (1979). Since such a challenge calls into question a conviction's finality, collateral relief is an extraordinary remedy that should only be granted when a fundamental defect could have resulted in a complete miscarriage of justice, or the rudimentary rules of fair procedure were not followed. *United States v. Timmreck*, 441 U.S. 780, 783, 99 S. Ct. 2085, 2087 (1979).

*Dela Peña* claims that he is entitled to relief for the following reasons: 1) a violation of the Speedy Trial Act; 2) the trial court violated *Dela Peña*'s fifth amendment right against self incrimination by "allowing the government to elicit testimony about [*Dela Peña*'s] post-arrest, pre-Miranda silence"; 3) the trial court failed to give a cautionary jury instruction regarding the credibility of informers/accomplices who testified; 4) violation of Federal Rules of Criminal Procedure, Rule 32;[4] 5) the District Court lacked subject matter jurisdiction since Dela Peña's possession of a firearm did not substantially affect interstate commerce; 6) ineffective assistance

---

[3] The statute states, in pertinent part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255.

[4] In his reply brief, *Dela Peña* concedes that there was no basis under the facts of his case to support a violation of FED. R. CIV. P. 32. The Court agrees and will not consider it further. *See,* "Defendant's Traverse to Government's Response to Defendant's Motion to Vacate, Set Aside, or Correct Sentence," ("Reply") at 28 Docket No. 135.

of trial counsel for failing to raise/object to said issues one through five above and 7) ineffective assistance of appellate counsel for also failing to raise issues one through six above.

**Procedural Bar.**

Dela Peña concedes that he failed to advance the instant claims in the District Court prior to judgment in the criminal case and on direct appeal. Claims not asserted previously, although available, are procedurally barred absent a showing of cause and actual prejudice. *United States v. Frady*, 456 U.S. 152, 166 (1982). "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'" *Bousley v. United States*, 523 U.S. 614, 622 (1998).

As noted, Dela Peña did not bring this matter before either the trial/sentencing court or appellate court. However, Dela Peña alleges the reason he did not address it previously was due to ineffective counsel. *See, Murray v. Carrier*, 477 U.S. 478, 488 (1986) ("[i]neffective assistance . . . is cause for a procedural default"). Accordingly the Court will consider Dela Peña's claims in that context.

**Ineffective Assistance of Counsel Claims.**

To demonstrate ineffective assistance of counsel, the petitioner must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A petitioner fulfills the first prong of the *Strickland* test by showing that "the behavior complained of falls below prevailing professional norms." *United States v. McMullen*, 98 F.3d 1155, 1158 (9th Cir. 1996). An inquiry into counsel's conduct probes "whether counsel's assistance was reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688. In engaging in such an inquiry, the court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" especially where counsel's acts may be considered "'sound trial strategy.'" *Id.* at 689.

*Speedy Trial Act.* Dela Peña contends that his trial and appellate counsel were ineffective for failing to move to dismiss his indictment because his case was not tried within the seventy

(70) day time limit imposed pursuant to 18 U.S.C. 3161(c)(1). He also states that the motions[5] filed by his attorney were frivolous and did not require a hearing. He suggests that the Speedy Trial clock should start thirty days from the date the government filed its response pursuant to 18 U.S.C. § 3161(h)(1)(J). *See*, Reply at 13, Docket No. 135. The Court notes that the provision which excludes the time up to the hearing on the motions, 18 U.S.C. § 3161(h)(1)(F), contains no reasonableness requirement.[6] As the Supreme Court has indicated, this was a deliberate decision by Congress. *See, Henderson v. United States*, 476 U.S. 321, 326-27 (1986). The decision reflects Congress' refusal to confuse further "an already complicated area of the law by requiring a district court to assess the merits of a motion before it determines that an exclusion of time will be permitted." *United States v. Springer*, 51 F.3d 861, 865 (9th Cir.1995).

Accordingly, since the time between the filing of a pre-trial motion and the conclusion of that motion is excludable from the Speedy Trial clock under § 3161(h)(1)(F), no Speedy Trial days accumulated between November 30, 2000 and February 22, 2001. *See, Henderson*, 476 U.S. at 330.

Dela Peña also contests exclusion of time concerning motions to withdraw as counsel and orders granting those motions and appointing new counsel. He seems to argue that since the Court signed an order appointing attorney Jehan'ad Martinez on February 26, 2001 *nunc pro tunc* to November 7, 2000, he was not really represented by anyone else. This logic fails. Review of the record reveals that the order appointing attorney Jehan'ad Martinez was signed by the Honorable John S. Unpingco on November 9, 2000 and filed on November 13, 2000. *See*, Docket No. 4. On November 16, 2000, Dela Peña himself filed a motion for substitution of counsel as he had retained attorney Gerald Gray. *See*, Docket No. 7. Dela Peña's motion was

---

[5] Said motions filed on November 30, 2000 were entitled "Motion for Discovery and Inspection, Motion for Statement of Government's Intention to Use Evidence, Motion to Suppress, Motion for Return of Property." See Docket Nos. 8, 9, 10, 11 and 12, respectively.

[6] The relevant portions of 18 U.S.C. 3161(h)(1) indicate:
    (h) The following periods of delay shall be excluded in computing the time within which . . . the trial of an such offense must commence:
        (1) Any period of delay resulting from other proceedings concerning the defendant, including but not limited to –
            (F) delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion;
            (J) delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court.

granted on November 20, 2000 at which time attorney Martinez was relieved of his responsibilities.

Attorney Gray later filed a motion to withdraw as counsel on February 20, 2001. *See*, Docket No. 30. It subsequently came to the Court's attention that attorney Martinez had done some work on Dela Peña's case in the two days immediately preceding his arraignment on November 9, 2000 (before the effective date of his order appointing.) In order for attorney Martinez to be paid for this work, the Court signed an order on February 26, 2001 to reflect that attorney Martinez was appointed as of November 7, 2001. *See*, Docket No. 32. The order was not issued in response to attorney Gray's motion to withdraw but solely to facilitate payment for services previously rendered to Dela Peña. In fact, attorney Gray's motion was granted on February 28, 2001 at which time attorney Curtis Van de Veld was appointed. *See*, Docket No. 34. On March 5, 2001, attorney Van de Veld filed a motion to withdraw that was granted on March 6, 2001 and attorney William Bischoff was appointed to represent Dela Peña. *See*, Docket Nos. 35 and 37, respectively. On March 13, 2001, attorney Bischoff filed a motion to withdraw at which time attorney Jehan'ad Martinez was reappointed to represent Dela Peña. *See*, Docket No. 39.

All of these motions to withdraw are excludable from the Speedy Trial clock under § 3161(h)(1)(F). Accordingly, this Court finds the following time frames tolled the Speedy Trial clock: November 16, 2000 through November 20, 2000; February 20, 2001 through February 28, 2001; March 5, 2001 through March 6, 2001 and March 13, 2001 through March 14, 2001.

Dela Peña further disputes the number of days that passed after April 3, 2001. Dela Peña maintains that a motion *in limine* filed by the government on April 3, 2001 should not have tolled the time between the filing and resolution of the motion. *See*, Docket No. 46. Said motion was resolved by stipulation of the parties approved by the Court on April 24, 2001. See, Docket No. 70.

Dela Peña's argument that the government filed the motion as a pretext to stop the Speedy Trial clock is meritless. Understandably the government wanted to resolve the potential problem of admissibility and authentication of audio tapes and their transcripts and translations.

The government's motion *in limine* was thus appropriate, and the District Court properly excluded the time between the filing of the government's *in limine* motion and the time the stipulation was accepted by the Court pursuant to 18 U.S.C. § 3161(h)(1)(F).

Accordingly, only forty-four non-excludable days passed before the commencement of Dela Peña's trial on April 9, 2001– seven (7) days prior to the motion for substitution of counsel ( November 16, 2001), nine (9) days that passed between the grant of substitution of counsel (November 20, 2001) and Dela Peña's motion's (November 30, 2001), four (4) days that passed between granting Attorney Gray's motion to withdraw (February 28, 2001) and the filing of Attorney Van de Veld's motion to withdraw (March 5, 2001), five (5) days that passed between granting Dela Peña's motion to continue the trial date (March 7, 2001) and the filing of Attorney Bischoff's motion to withdraw (March 13, 2001) and nineteen (19) days that passed between granting Attorney Bischoff's withdrawal (March 14, 2001) and the filing of the government's motion in *limine* (April 3, 2001). This was well within the seventy day limit of the Act. 18 U.S.C. § 3161(c)(1).[7] Likewise, Dela Peña's claim that his counsel was ineffective in failing to raise a violation of the Speedy Trial Act is without merit.

*Fifth Amendment Claim.* Dela Peña claims that his counsel was ineffective at trial because he did not object to the government's question concerning Dela Peña's request for an attorney during an interview conducted by Agent Leon Guerrero on March 14, 2000. Dela Peña claims his Fifth Amendment right to remain silent was implicated because he was "in custody" and subject to "interrogation." He asserts that the trial Court erred in allowing the government to elicit testimony that he asked for an attorney while being interviewed.

The government claims the question was proper since Dela Peña was not "in custody" at the time that Dela Peña was being questioned and supports that argument by pointing out that in fact, Dela Peña's arrest occurred some months later.

The Court reviews Dela Peña's claim that the use of his silence was in error under the plain-error standard, because he did not properly object at trial. *United States v. Plunk*, 153 F.3d 1011, 1019 (9th Cir.), *amended by* 161 F. 3d 1195 (9th Cir. 1998). Under the plain-error standard

---

[7] Even assuming *arguendo* that the time during which the government's in *limine* motion was pending was not excluded **and** the trial clock began again after April 9, 2001 through April 24, 2005 (an additional twenty (20) days), Dela Peña still would have been tried within the time frame of the Speedy Trial Act as only sixty-four (64) "non excludable" days would have elapsed. (April 4, 2001 would be excluded due to government's motion to release Grand Jury Transcript and April 9, 2001 would likewise be excluded due to the commencement of the trial.)

the defendant must show that: 1) an error occurred; 2) the error is "plain"; 3) the error "affect[ed] substantial rights" in that it was prejudicial to the outcome of the proceedings and 4) it "seriously affect[ed] the fairness, integrity or public reputation of the judicial proceedings." *United States v. Olano*, 113 S.Ct. 1770, 1776-80 (1993).

In *Brecht v. Abrahamson*, 507 U.S. 619, 113 S.Ct. 1710 (1993), the Court further addressed the issue of harmless error in the context of collateral review. The Court explained:

> the writ of habeas corpus has historically been regarded as an extraordinary remedy, a bulwark against convictions that violate fundamental fairness. Those few who are ultimately successful [in obtaining habeas relief] are persons whom society has grievously wronged and for whom belated liberation is little enough compensation.

*Id.* at 633-34, 113 S.Ct. 1710 (internal citations and quotation marks omitted) (alteration in original).

The Court determined that "habeas petitioners may obtain plenary review of their constitutional claims, but they are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'" *Id.* at 637, 113 S.Ct. 1710. This standard requires a court to determine "whether the error had substantial and injurious effect or influence in determining the jury's verdict." *Id.* (quotation marks omitted).

The record here is insufficient for the Court to make a determination regarding the custodial status of Dela Peña during his interview with Agent Leon Guerrero. The testimony elicited at trial concerning this matter was virtually nonexistent. However, for purposes of analysis the Court will assume that the defendant was in custody and as such the Court's admission of the aforementioned statement violated the Fifth Amendment. Accordingly, the first two requirements of the plain error standard are met.

Despite the purported "plain error", Dela Peña has failed to meet his burden of showing that the error "affected the outcome of the district court proceedings." *Olano*, 507 U.S. at 734. "When deciding whether a prosecutor's reference to a defendant's post-arrest silence was prejudicial, this Court will consider the extent of comments made by the witness, whether an inference of guilt from the silence was stressed to the jury, and the extent of other evidence suggesting the defendant's guilt." *Guam v. Valerie*, 136 F.3d 648, 652 (9th Cir. 1998).

The testimony with respect to this issue was scant and relegated to just a few lines of text out of almost 800 pages of testimony. (TR IV 524-25).[8] Agent Leon Guerrero testified on a variety of other matters, notably the discovery of numerous items during the search, including the firearm which was the subject of count five. Further, Agent Leon Guerrero was responsible for photographing and seizing the majority of the items recovered from Dela Peña's home. Taken in context, the reference to Dela Peña's request for counsel was incidental. Moreover, eleven other government witnesses took the stand and none of them testified about Dela Peña's request for an attorney. In fact, it was never mentioned again by anyone during the course of the trial.

The Court finds that the other independent testimonial and physical evidence including wire-tap conversations (which include incriminating remarks made by Dela Peña), wire transfers, hotel and phone records were overwhelming as to Dela Peña's guilt. Therefore, the improper reference to Dela Peña's request for counsel was not "prejudicial enough to affect the outcome of the proceedings." *Id.* at 653.

Since the Court has determined that Dela Peña was not prejudiced by the error likewise the action of the prosecutor did not "affect substantial rights." Because this third prong has not been met, the Court need not consider the matter further as Dela Peña's claim fails. As a result, his claim of ineffective assistance of counsel in this regard is meritless.

*Accomplice Jury Instruction.* Dela Peña argues that both trial and appellate counsel were ineffective in failing to object to or raise the issue that the jury instructions with respect to informer/accomplice testimony were insufficient. In review of the record it is uncontroverted that neither instruction 4.10 (Testimony of Witness Receiving Benefits) nor 4.11 (Testimony of Accomplice) were given to the jury. *See, Ninth Circuit Manual of Model Jury Instructions,* 2000

---

[8] Examination of the transcript reveals the following record:
Q: And counsel had asked you that Grace Tenorio was arrested, and you also mentioned that they were both questioned – or counsel had asked you whether they were both questioned at the time they were detained?
A: Yes.
Q: Now, you attempt – you also attempted to question the defendant, correct?
A: That's correct.
Q: In fact, earlier, didn't you indicate that he told you he was employed as a peddler?
A: Yes, I did.
Q: And were you able to obtain any more information from him at that time?
A: No, I wasn't.
Q: Why not?
A: He wanted to speak to an attorney.

Ed. Further, instruction 4.10 was included in Dela Peña's list of proposed jury instructions submitted for the Court's consideration on May 2, 2001. *See*, Docket No. 77. However, during the jury instruction conference instructions 4.10 and 4.11 were not mentioned by the Court nor were they requested by Dela Peña, despite other specific requests made by defense counsel regarding alternate versions of other instructions. (TR VI 732-751) Likewise, Dela Peña failed to object to the final form of the jury instructions despite an admonishment by the Court to review the instructions carefully. (TR VI 771).

Since Dela Peña did not object to the jury instructions, the Court's jury instructions are reviewed for plain error. *United States v. Monzon-Valenzuela*, 186 F.3d 1181, 1182 (9th Cir.1999). Under plain error review, the Court may correct an error only if it is plain and affected the defendant's substantial rights. *United States v. Klinger*, 128 F.3d 705, 712 (9th Cir.1997). Any error in failing to administer the jury instructions 4.10 and 4.11 did not affect Dela Peña's substantial rights because there was ample evidence against Dela Peña that corroborated the testimony of Romy Sabangan ("Sabangan"), Renato Santos ("Santos") and Victorino Santiago ("Santiago"). This other evidence was material and substantial. It included but was not limited to, recorded wiretap conversations (some of which included Dela Peña making incriminating statements), physical evidence seized from Dela Peña's person, home and car, records of phone calls, wire transfers hotel reservations, car rentals, and travel activity.

Additionally, although neither instruction 4.10 nor 4.11 were given, the Court notes that the jury was instructed pursuant to instruction 4.12 (Witness Who Has Pleaded Guilty)[9] which is strikingly similar to instructions 4.10 and 4.11 in its cautionary nature.[10] Despite the fact that Sabangan, Santos and Santiago were not characterized as an "accomplice" or "one who received benefits," it did direct the jury to closely and carefully scrutinize their testimony as a result of

---

[9] The Court instructed the jury in this regard as follows:

> Romy Sabangan, Renato Santos, and Victorino Santiago have pleaded guilty to crimes. Their guilty pleas are not evidence against the defendant, and you may consider them only in determining the witness' believability. You should consider these witnesses' testimony with great caution, giving them the weight you feel they deserve.

TR VI 780-81

[10] In pertinent part 4.10 and 4.11 provide that the witnesses testimony should be examined "with greater caution than that of other witnesses," while 4.12 admonishes the jury to "consider this witness' testimony with great caution, giving it the weight you feel it deserves." *See, Ninth Circuit Manual of Model Jury Instructions*, 2000 Ed.

their plea agreements. This admonishment coupled with the generic credibility instruction, which admonished jurors to "consider the witness' interest in the outcome of the case and any bias or prejudice" was sufficient to instruct the jury to weigh the testimony of Sabangan, Santos and Santiago with great care.

Accordingly, any error in failing to give instructions 4.10 and 4.11 was harmless. *See, United States v. Holmes*, 229 F.3d 782, 788 (9th Cir.2000). And, Dela Peña's claim of ineffective assistance of counsel with respect to this issue fails.

*Subject Matter Jurisdiction regarding 18 U.S.C. §§ 922(g)(1) and (3).* Dela Peña argues that the Court lacks subject matter jurisdiction with respect to his two convictions pursuant to 18 U.S.C. §§ 922(g)(1) and (3) because the Court and jury utilized the "minimal nexus" analysis with respect to his possession of a firearm affecting interstate commerce. Dela Peña maintains that the proper analysis is whether his possession of a firearm "substantially affected" interstate commerce as is required by *United States v. Lopez*, 514 U.S. 549, 115 S.Ct. 1624 (1995) and *United States v. Morrison*, 529 U.S. 598, 120 S.Ct. 1740, and *Jones v. United States*, 529 U.S. 848, 120 S.Ct. 1904, (2000).

Dela Peña, however ignores the law of this circuit subsequent to *Lopez, Morrison* and *Jones*. The Ninth Circuit has consistently upheld convictions under § 922(g) as valid under the Commerce Clause utilizing the "minimal nexus" analysis, that is, if the firearm crossed a state line at some time in its history. *See, e.g., United States v. Gonzales*, 307 F.3d 906, 914 (9th Cir. 2002); *United States v. Rousseau*, 257 F.3d 925 (9th Cir. 2001); *United States v. Davis*, 242 F.3d 1162 (9th Cir. 2001), *United States v. Carrasco*, 257 F.3d 1045, 1053 (9th Cir. 2001) and *United States v. Jones*, 231 F.3d 308 (9th Cir. 2000). In this case, the uncontroverted testimony of Special Agent Gil Bartosh revealed that the firearm in question was manufactured outside of Guam in California and therefore traveled in interstate commerce at some time. (TR V 623-26).

The Court finds that evidence adduced at trial satisfies the "minimal nexus" required pursuant to Ninth Circuit precedent. Accordingly, Dela Peña's request for relief based on lack of subject matter jurisdiction and accompanying claims of ineffective assistance of counsel in this regard, are without merit.

## CONCLUSION

Based on the aforementioned reasoning, this Court finds that all claims raised by Dela Peña are without merit. Accordingly, the Petitioner's motion for relief pursuant to 28 U.S.C. § 2255 is DENIED.

**IT IS SO ORDERED** this 7th day of July, 2005.

_____
Robert M. Takasugi[*]
United States District Judge

Notice is hereby given that this document was entered on the docket on 7-7-05.
No separate notice of entry on the docket will be issued by this Court.
Mary L. M. Moran
Clerk, District Court of Guam

By: Marilyn B. Alcon  7-7-05
Deputy Clerk / Date

---

[*] The Honorable Robert M. Takasugi, United States Senior District Judge for Central California, by designation